IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAK AMERICAS MISSISSIPPI, INC. | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:18cv31-HSO-JCG |
| | § | |
| JEDSON ENGINEERING, INC. and | § | |
| ROB'T J. BAGGETT, INC. | § | DEFENDANTS |
| | | |
| JEDSON ENGINEERING | § | COUNTER-CLAIMANT |
| | § | |
| v. | § | |
| | § | |
| DAK AMERICAS MISSISSIPPI, INC. | § | COUNTER-DEFENDANT |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT/
COUNTER-CLAIMANT JEDSON ENGINEERING'S MOTION [60]
FOR PARTIAL SUMMARY JUDGMENT ON ITS COUNTERCLAIM,
AND DENYING AS MOOT PLAINTIFF/COUNTER-DEFENDANT DAK
AMERICAS MISSISSIPPI, INC.'S MOTION [166] TO SUBSTITUTE
RESPONSE IN OPPOSITION TO JEDSON ENGINEERING'S
MOTION [60] FOR PARTIAL SUMMARY JUDGMENT**

BEFORE THE COURT are Defendant/Counter-Claimant Jedson

Engineering's Motion [60] for Partial Summary Judgment on its Counterclaim

against Plaintiff/Counter-Defendant DAK Americas Mississippi, Inc., and

Plaintiff/Counter-Defendant DAK Americas Mississippi, Inc.'s Motion [166] to

Substitute Response to Jedson Engineering's Motion [60] for Partial Summary

1

Judgment. After due consideration of the record, the parties' Motions, related pleadings, and relevant legal authority, the Court is of the opinion that Jedson Engineering's Motion [60] for Partial Summary Judgment should be denied and DAK Americas Mississippi, Inc.'s Motion [166] to Substitute Response should be denied as moot.

I. BACKGROUND

A. Factual background

This dispute arises out of the design and construction of a concrete storage slab at DAK Americas Mississippi, Inc.'s ("DAK") PET resin manufacturing facility located in Bay St. Louis, Hancock County, Mississippi. *See* Compl. [1] at 2. According to DAK, it was in need of creating a suitable area for staging, unloading, and storing stacked shipping containers. This required a slab that was suitable for operating loaders and other heavy equipment necessary to transport, unload, and stack shipping containers. *Id.* Jedson Engineering ("Jedson") is an engineering firm located in Cincinnati, Ohio. It was engaged by DAK to design the slab and supervise its construction. *Id.* Defendant Rob't J. Bagget, Inc. ("RJB") was selected as the contractor to construct the slab. *Id.* at 3.

To facilitate design and construction, DAK issued several purchase orders to Jedson. Jedson has submitted the final October 15, 2014, Purchase Order # 4500426907 issued for the work, which included certain Terms and Conditions relevant here, as follows:

> 5. **Warranty**: [Jedson] expressly warrants that the Services will . . . meet [Jedson's] Order, all referenced or attached specifications,

2

tolerances, limitations, drawings, samples and information; be of merchantable quality, free from defects on workmanship and material, be fit for such purposes as expressed in the Order, or are reasonable [sic] inferable from the terms of the Order; and in accordance with standard of care of other professionals performing the same or similar work in that locality. These warranties shall run to [DAK], its successors, assigns, customers and the user of its products . . . .

6. **Liability**:
A) Should any Services, fail to conform with the warranties of Article 6 [sic] [Jedson's] sole liability and [DAK's] sole remedies shall be as follows: [Jedson] shall rework the Services promptly following [DAK's] notification or, at [DAK's] option, refund the purchase price.
B) To the extent permitted by law, neither party shall be liable to the other for any special, consequential or punitive damages, even if caused by negligence, willful misconduct or breached [sic] of contract. The preceding sentence and the liability/remedies limitations of A) above do not apply to, and each party shall indemnify and defend the order[1] against (i) fines or civil penalties; (ii) loss or damage to the indemnified party's property; and (iii) costs (including legal fees and expenses) and liability arising from claims, suits, causes of action, action, judgments, by third parties (including legal fees and expenses) and liability arising from claims, suits, causes of action, action, judgments by third parties (including either party's employees) based on death, personal injury, loss or damage to property or the environment to the extent (i), (ii) and (iii) are caused by the negligence, willful misconduct or breach of contract of the indemnifying party.

Ex. "3" [60-3] at 4.[2] The term "Services" is defined as "any services and work

---

[1] It is unclear whether "order" was the word intended here, whether it was meant to be a capitalized "Order" as defined in the Terms and Conditions, or whether this was a typographical error such that it was supposed to read "other." According to Jedson's briefs, "order" is defined in the Terms and Conditions as the written Purchase Order sent by DAK to Jedson. *See* Rebuttal [86] at 7 n.6. In contrast, DAK takes the position that this sentence "states that the parties will 'indemnify and defend' each **other** against such claims . . . ." Resp. [79] at 4-5 (emphasis added) (quoting Ex. "3" [60-3] at 4).

[2] DAK attached the same Purchase Order to its Complaint [1], *see* Ex. "A" [1-2] at 1-4, but the two Purchase Orders supplied by the parties reflect some differences. Exhibit "A" to the Complaint contained a "PO Change date" of "04/09/2015," *id.* at 1, while the version attached to Jedson's Motion [60] for Summary Judgment has a "PO Change date" of "01/28/2015," Ex. "3" [60-3] at 1. The Terms and Conditions of both versions of the Purchase Order appear to be otherwise identical. *Compare id.* at 4, *with* Ex. "A" [1-2] at 4.

ordered by [DAK] pursuant to the [Purchase] Order." *Id.*

According to DAK, even though Jedson knew of DAK's intended purposes for the slab and agreed to design and supervise its construction accordingly, Jedson failed to design a sufficient slab and failed to manage and supervise the construction in the manner necessary to fit DAK's intended purposes. *See* Compl. [1] at 2-4. DAK claims that, within months of completion of construction, it discovered issues with the new concrete slab, including what it characterizes as serious cracking and chipping. *Id.* at 4-5.

B. <u>Procedural background</u>

Invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, DAK filed this lawsuit on January 31, 2018, against Defendants Jedson and RJB. DAK alleged negligent design, negligent construction management, and breach of contract claims against Jedson, and negligent construction and breach of contract claims against RJB. *See* Compl. [1] at 6-10. Jedson filed a Counterclaim [15] against DAK seeking a declaratory judgment determining DAK's rights and Jedson's responsibilities under the limitation-of-liability clause contained in section 6(A) of the Purchase Order [15-1] and limiting DAK's remedies against Jedson accordingly. Jedson also advanced claims for specific performance and bad faith breach of contract. Countercl. [15] at 18-21. RJB filed a Cross-claim [43] against Jedson asserting claims for implied contractual indemnity, common law indemnity, legal/*Spearin* immunity, negligent design, and negligent supervision, Cross-cl. [43] at 12-16, but RJB later voluntarily dismissed its Cross-claim, Order [203] at 1-2.

4

1. Jedson's Motion [60] for Partial Summary Judgment

Jedson's Motion [60] for Partial Summary Judgment seeks a declaration from the Court that "the Terms and Conditions attached to the final purchase order are valid and enforceable and operate [to] limit DAK's recovery to 1) refund of the purchase price or 2) rework of services." Jedson's Mot. [60] at 3. Jedson also asks the Court to enter "an Order directing DAK to elect its remedy pursuant to the Terms and Conditions." *Id.*

DAK responds that the limitation-of-liability clause does not unambiguously apply because Jedson damaged DAK's property due to Jedson's own negligence or breach of contract. *See* Resp. [79] at 3-5. DAK maintains that section 6(B)(ii) of the Terms and Conditions renders the limitation-of-liability clause inapplicable. *Id.*

Jedson replies that a plain reading of the contract demonstrates that "the damage to property of Article 6(B) does not apply to property which was the subject of Jedson's contract." Rebuttal [86] at 1. According to Jedson, the "damage to property" mentioned in section 6(B)(ii) means

> damage to **existing** property, not damage to property created by Jedson's work or work being performed by Jedson. Otherwise, the warranty would mean nothing and would be superfluous, given the object of Jedson's scope was to design property.

*Id.* at 8 (emphasis in original). Additionally, Jedson maintains that section 6(B) is clearly "meant to be a defense and indemnification clause for claims made by third parties against the services provided pursuant to the order," and that this section only applies to claims brought by third parties. *Id.* at 10.

5

## 2. DAK's Motion [166] to Substitute

Months after DAK filed its Response [79] to Jedson's Motion, it filed a Motion [166] to Substitute its Response to the Motion for Partial Summary Judgment. According to DAK, it "learned in discovery that Jedson failed to have licensed professional engineers design the slab at issue." Mot. [166] at 1. DAK has attached a proposed substituted Response [166-1] as Exhibit "1" to its Motion [166].

The proposed substituted Response [166-1] asserts that Jedson has admitted in its Answer that it was hired to provide professional engineering services, including designing the concrete slab to meet DAK's needs. Resp. [166-1] at 6-7 (citing Ans. [15] at 8). It argues that, based upon invoices DAK received, DAK "reasonably believed that Jedson had a licensed professional engineer design the concrete container slab. This was not the case." *Id.* at 4. DAK did amend its Answer to Jedson's Counterclaim to raise additional defenses, including illegality of contract. *Id.* at 7; *see* Am. Ans. [139] at 1-8. DAK takes the position that Jedson's Motion for Partial Summary Judgment should be denied because Jedson is barred from enforcing the contract by its purported unclean hands and illegal conduct. Resp. [166-1] at 9-15.

Jedson opposes DAK's request to substitute its Response, maintaining that Jedson's Motion [60] for Partial Summary Judgment has been fully briefed and is ripe for resolution. Resp. [188] at 2. Jedson asserts that DAK has not presented an adequate explanation for its delay in seeking to substitute its Response and that Jedson will be prejudiced if such a substitution is permitted. *Id.* at 6-9. Jedson also

6

argues that what DAK seeks to do is file a sur-reply, which is unnecessary in this case. *Id.* at 9-10. Finally, Jedson contends that DAK cannot prevail on an unclean hands defense. *Id.* at 10-14.

## II. DISCUSSION

A. DAK's Motion [166] to Substitute Response

Even without considering DAK's proposed substituted Response, the Court finds that Jedson has not met its summary judgment burden. Because the Court will deny Jedson's Motion [60] for Partial Summary Judgment, DAK's Motion [166] to Substitute Response is moot.

B. Jedson's Motion [60] for Partial Summary Judgment on its Counterclaim

1. Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R*

*Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

In this case, Jedson has filed an "offensive" Motion for Partial Summary Judgment on its own Counterclaim. Where, as here, the movant bears the burden of proof on an issue, in order to obtain summary judgment the movant "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

2. <u>Applicable substantive law</u>

In this diversity case, the Court must look to the forum state, Mississippi, "for the choice-of-law principles necessary to determine which substantive law will apply." *Western-Southern Life Assurance Co. v. Kaleh*, 879 F.3d 653, 658 (5th Cir. 2018). The Mississippi Supreme Court has held that "[t]he law by which a contract is to be governed is that which parties intended or may fairly be presumed to have intended." *Daniels v. Crocker*, 235 So. 3d 1, 7 (Miss. 2017) (quotation omitted). When a contract contains a valid choice-of-law provision, Mississippi courts apply the specified state's law to the contract at issue. *See id.*

In this case, the Purchase Order contains a choice-of-law provision which provides that "any controversy relating to it or the Services purchased shall be governed by the laws of the State of North Carolina, excluding its conflicts of law

8

principles." Ex. "3" [60-3] at 4. Both parties rely upon North Carolina law in their briefs. *See, e.g.,* Jedson's Mem. [61] at 5; DAK's Resp. [79] at 3; Jedson's Rebuttal [86] at 4. Accordingly, the Court will apply North Carolina law in resolving this contract dispute.

3. <u>Contract interpretation under North Carolina law</u>

Under North Carolina law, "[i]nterpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." *State v. Philip Morris USA Inc.*, 685 S.E.2d 85, 90 (N.C. 2009) (quotation omitted). "Intent is derived not from a particular contractual term but from the contract as a whole." *Id.* (quotation omitted). A court's "task is not to find discord in differing clauses, but to harmonize all clauses if possible." *Id.* at 91 (quotation omitted).

"[A] contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law." *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 658 S.E.2d 918, 921 (N.C. 2008). When there is no ambiguity, a court must interpret the language "as the parties intended, expressed by their chosen words." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.,* 692 S.E.2d 605, 614 (N.C. 2010) (quotation omitted).

Unless the language of a contract is "fairly and reasonably susceptible" to multiple constructions, a court "must enforce the contract as the parties have made it and may not, under the guise of interpreting an ambiguous provision, remake the contract . . . ." *Harleysville Mut. Ins. Co.,* 692 S.E.2d at 612 (quotation omitted).

9

"Whether or not the language of a contract is ambiguous or unambiguous is a question for the court to determine." *Piedmont Bank & Tr. Co. v. Stevenson*, 339 S.E.2d 49, 52 (N.C. Ct. App. 1986), *aff'd*, 344 S.E.2d 788 (N.C. 1986).

When "either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations," an ambiguity exists. *Schenkel & Shultz, Inc.*, 658 S.E.2d at 921. "The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous." *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assocs., Inc.*, 366 S.E.2d 480, 484 (N.C. 1988). "[A]mbiguous contract provisions are to be construed against the drafting party." *Esteel Co. v. Goodman*, 348 S.E.2d 153, 157 (N.C. Ct. App. 1986). When an agreement is ambiguous and the intention of the parties remains unclear, "interpretation of the contract is for the jury." *Schenkel & Shultz, Inc.*, 658 S.E.2d at 921.

4. Analysis

It is not disputed that DAK drafted the Purchase Order, and section 6(A) in the Terms and Conditions potentially limits Jedson's liability for failing to conform with the warranties contained in section 5. Ex. "3" [60-3] at 4. To the extent it controls, the limitation-of-liability section requires Jedson to either rework its services or, at DAK's option, refund the purchase price. *Id.* However, section 6(B) also sets forth certain exceptions under which this limitation of liability does not apply. *Id.* DAK relies upon the exception in section 6(B)(ii) to argue that Jedson's liability is not limited, while Jedson takes the position that none of the exceptions

10

apply and the limitation provision controls.

Section 6(B)(ii) applies to "loss or damage to the indemnified party's property," Ex. "3" [60-3] at 4, which DAK maintains would mean its property. *See, e.g.,* Resp. [79] at 3-4. The final clause of section 6(B) provides that the exceptions apply "to the extent (i), (ii), and (iii) are caused by the negligence, willful misconduct or breach of contract of the indemnifying party," *id.*, which, if DAK's interpretation is correct, would mean Jedson.[3]

In Jedson's view, section 6(B)(ii) does not apply because there was no damage to DAK's existing property, and because the specific exceptions listed in section 6(B) only arise with respect to claims made by third parties. Rebuttal [86] at 8, 10-11. According to Jedson, "it is clear that subsection B is meant to be a defense and indemnification clause for claims made by third parties against the services provided pursuant to the order." *Id.* at 10.

If this is the case, then under Jedson's interpretation section 6(B)(ii)'s exception would apply only to a request for indemnification (1) made by DAK to Jedson, (2) pertaining to a claim made by a third party against DAK, (3) related to Jedson's services under the purchase order, (4) for damage to DAK's own preexisting property, (5) that was due to Jedson's negligence, willful misconduct, or breach of contract.

Jedson also maintains that "if Jedson's work damaged an existing building,

---

[3] Jedson argues, however, that "whether or not Jedson was negligent or breached its contract in general is not a **material** fact for the limited purposes of Jedson's Motion [60] . . . ." Rebuttal [86] at 2 (emphasis in original).

11

then the warranty [in section 5] does not apply and neither does the limitation of liability clause" in section 6. Rebuttal [86] at 11. If this statement is correct, it is unclear when section 6(B)(ii)'s exception, which Jedson maintains only relates to preexisting property and not the slab, would ever apply. This arguably would render section 6(B)(ii) superfluous. Such a result would conflict with the canon that "[i]t is presumed that each part of the contract means something." *WakeMed v. Surgical Care Affiliates*, LLC, 778 S.E.2d 308, 824 (N.C. Ct. App. 2015) (quoting *Brown v. Lumbermens Mut. Casualty Co.*, 390 S.E.2d 150, 153 (N.C. 1990)).

Even if Jedson is correct that the contract is unambiguous such that damage to preexisting property is necessary to trigger the exclusion in section 6(B)(ii), DAK has presented evidence creating a question of fact whether Jedson's actions have "caused damage to DAK's property," specifically that Jedson "caused the slab, **and** DAK's property, to be unsuitable for DAK's intended purpose . . . ." Aff. of Colvin D. Mann [79-1] at 3-4 (emphasis added).[4] Jedson has not shown beyond dispute that there was no damage to DAK's preexisting property, including its real property, caused by the design and construction of the purportedly defective slab. This alone would make summary judgment inappropriate.

Finally, DAK argues that "[a]lthough ambiguous contracts are generally construed against the drafter, ambiguous limitation of liability clauses are disfavored and strictly construed. North Carolina has not addressed which of these

---

[4] Jedson argues that Mann's Declaration relates only to liability issues, is irrelevant, and should be stricken. *See* Rebuttal [86] at 2. However, the Declaration also raises the potential fact issue of damage to DAK's other property, which would be relevant to section 6(B)(ii).

12

competing canons of construction takes precedence." Resp. [79] at 4 n.1. Jedson did not address this argument in its Rebuttal [86].

Based upon its review of the Purchase Order and its Terms and Conditions, the Court is of the opinion that Jedson has not carried its burden of demonstrating that the limitation-of-liability clause unambiguously applies to DAK's claims against it. Because Jedson has not established beyond peradventure all of the essential elements of its declaratory judgment claim, its Motion for Partial Summary Judgment should be denied. *See Fontenot*, 780 F.2d at 1194.[5]

### III. CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. Jedson's Motion [60] for Partial Summary Judgment on its Counterclaim will be denied, and DAK's Motion [166] to Substitute Response to Jedson's Motion [60] for Partial Summary Judgment will be denied as moot.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant/ Counter-Claimant Jedson Engineering's Motion [60] for Partial Summary

---

[5] For the first time in its Rebuttal [86], Jedson argues that North Carolina's economic loss rule prohibits DAK from bringing a negligence tort liability claim against it, and that the rule supports Jedson's reading of the Purchase Order's Terms and Conditions. *See* Rebuttal [86] at 8-9. The Court does not consider arguments raised for the first time in a rebuttal. *See Wallace v. Cty. of Comal*, 400 F.3d 284, 292 (5th Cir. 2005). Moreover, as Jedson recognizes, "the issue before the Court is not one of whether or not DAK can sue Jedson for negligence . . . ." Rebuttal [86] at 9. The question at this juncture is one of contract interpretation and whether Jedson has shown that the limitation-of-liability clause unambiguously applies in this case. This inquiry involves an examination of the language of the Purchase Order itself to ascertain, if possible, the parties' intent. *See Philip Morris USA Inc.*, 685 S.E.2d at 90.

13

Judgment on its Counterclaim is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff/Counter-Defendant DAK Americas Mississippi, Inc.'s Motion [166] to Substitute Response to Jedson Engineering's Motion [60] for Partial Summary Judgment is **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED**, this the 28th day of March, 2019.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE